NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| CANDIDO MAYAS, | : | Civ. Action No. 20-2342 (RMB) |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| JOHN POWELL, *Administrator, South* | : | |
| *Woods State Prison,* and | : | |
| THE ATTORNEY GENERAL | : | |
| OF THE STATE OF NEW JERSEY, | : | |
| | : | |
| Respondents | : | |
| | : | |

**APPEARANCES**

Candido Mayas
South Woods State Prison
215 South Burlington Road
Bridgeton, NJ 08302
        *Plaintiff, pro se*

Dannielle Renee Pennino, Assistant County Prosecutor
Stephen C. Sayer, Assistant County Prosecutor
Cumberland County Prosecutor's Office
115 Vine Street
Bridgeton, NJ 08302
        *On behalf of Respondents*

RENÉE MARIE BUMB, Chief United States District Judge

        This matter comes before the Court upon Petitioner Candido Mayas'

("Petitioner's") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254,

challenging his 2007 state court conviction for unlawful possession of a firearm and possession as a member of a class of persons not to have weapons. (Dkt., No. 1.)[1] Respondents filed an answer opposing habeas relief. (Dkt. No. 11.)  Petitioner did not file a reply brief. The Court will determine the petition on the briefs, without oral argument, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Court denies the petition for writ of habeas corpus.

## I.    PROCEDURAL HISTORY

A Cumberland County grand jury returned a thirty-four count indictment in which defendants Candido Mayas, Angel L. Rivera, Manuel Mayas, and Daniel Rivera were each charged with three counts of third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); one count of fourth-degree possession of a prohibited device (hollow-point bullets), N.J.S.A. 2C:39-3(f); and two counts of third-degree receiving stolen property, N.J.S.A. 2C:20-7(a). (Dkt. No. 11-15.) In addition, Angel and Candido were each charged with one count of fourth degree obstructing the administration of law, N.J.S.A. 2C:29-l(a), and Candido and Manuel were each charged with three counts of second-degree possession of a weapon by a convicted person, N.J.S.A. 2C:39-7(b). (*Id.*)

Rivera entered a guilty plea prior to trial. (Dkt. No. 11-4 at 7-32.) The remaining defendants were tried together before a jury from June 5 through June 7,

---

[1] The Court will cite documents in the record by the docket entry number ("Dkt. No.") on the Court's electronic case management system, CM/ECF, with page citations, where appropriate, as assigned by CM/ECF.

2007. (Dkt. Nos. 11-8, 11-9, 11-10.) All three defendants were found guilty of three counts of third-degree unlawful possession of a weapon. (Dkt. No. 11-10 at 78-81.) Following a second trial before the same jury, held at the conclusion of the first, Petitioner and Manuel Mayas were both found guilty of three counts of second-degree possession of a weapon by a convicted person. (*Id.* at 81-98.)

After finding that Petitioner was a persistent offender under N.J.S.A. 2C:44-3(a), the trial court found aggravating factors N.J.S.A. 2C:44-l(a)(3), (6), and (9) and no mitigating factors. (Dkt. No. 11-11 at 14-15.) Petitioner was sentenced to an extended twenty-year term of imprisonment, with ten years of parole ineligibility on each of the three counts of possession of a weapon by a convicted person, N.J.S.A. 2C:39-7(b), and a five-year term with a two- and one-half-year period of parole ineligibility on each of the three counts of unlawful possession of a weapon, N.J.S.A. 2C:39-5(b), all counts to run concurrently. (Dkt. No. 11-11 at 13-18.) The trial court entered a "Change of Judgment of Conviction & Order for Commitment, Resentence" on June 12, 2012, (Dkt. No. 11-17), consistent with the Appellate Division's remand on Counts 33 and 34, for improper imposition of three extended term sentences (Dkt. No. 11-20 at 34.) The Appellate Court consolidated the appeals of the defendants. (*Id.* at 5.)

## II.   DISCUSSION

### A.   Standard of Review

Under 28 U.S.C. § 2254(d), if a constitutional claim has been exhausted in the State courts:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Third Circuit directed habeas courts to follow a two-step analysis under § 2254(d)(1). *Rosen v. Superintendent Mahanoy SCI*, 972 F.3d 245, 253 (3d Cir. 2020) (citing *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3d Cir. 1999) (*en banc*), *cert. denied* 528 U.S. 824 (1999)). First, courts should "determine what the clearly established Supreme Court decisional law was at the time Petitioner's conviction became final" and "identify whether the Supreme Court has articulated a rule specific enough to trigger 'contrary to' review." *Id.* at 253 (quoting *Fischetti v. Johnson*, 384 F.3d 140, 148 (3d Cir. 2004)). "The 'clearly established Federal law' provision requires Supreme Court decisions to be viewed through a 'sharply focused lens.'" *Id.* Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).   A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), only if the state court

applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]" *Williams*, 529 U.S. at 405-06.

Second, if Supreme Court precedent is not specific enough to trigger contrary review, habeas courts should "evaluate whether the state court unreasonably applied the relevant body of precedent." *Rosen*, 972 F.3d at 253 (quoting *Matteo*, 171 F.3d at 888)). Under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams*, 529 U.S. at 410). For relief under this provision, the state court's decision "evaluated objectively" must have "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Rosen*, 972 F.3d at 252 (quoting *Matteo*, 171 F.3d at 890)). A habeas court must frame the "relevant question as whether a fairminded jurist could reach a different conclusion." *Shinn v. Kayer*, 141 S. Ct. 517, 524 (2020) or, in other words, whether "every fairminded jurist would disagree" with the state court. *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021).

A petitioner who claims that the state court's adjudication of his claim was based on an unreasonable factual determination under § 2254(d)(2) faces a similarly heavy burden of proof because "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also Miller-El v.*

*Cockerell*, 537 U.S. 322, 340 (2003). "The petitioner must show that the state court verdict was based on an unreasonable determination of the evidence and that a reasonable factfinder could not have reached the same conclusion." *Rosen*, 972 F.3d at 252 (3d Cir. 2020) (citing *Campbell v. Vaughn*, 209 F.3d 280, 291 (3d Cir. 2000)). Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

## B.   Appellate Division's Findings of Fact on Direct Appeal

Habeas review is deferential to a state court's determination of facts. 28 U.S.C. § 2254(e)(1) provides that

> [i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

On Petitioner's direct appeal of his conviction, the Appellate Division made the following findings of fact.

> Vineland Police Officer Anthony Ruberti testified that at approximately 1:00 a.m., on October 5, 2005, he observed a Suzuki vehicle turn on the Boulevard in the center city area without lit tail lights. Officer Ruberti followed the Suzuki and activated his overhead lights and vehicle spotlight to effectuate a stop. With the aid of illumination, Officer Ruberti observed the rear passenger on the driver's side slouch and apparently attempt to conceal something underneath his seat. The Suzuki failed to stop and instead continued on the Boulevard toward Wood street. Officer Ruberti sounded his vehicle's air horn and siren, but the Suzuki continued to travel to another street, eventually

pulling over, and parking in the road, at an angle, in front of a residence.

Officer Ruberti stopped fifteen to twenty feet behind the Suzuki, and called to check the vehicle's license tag. Two occupants exited the vehicle, one from the front passenger seat, whom Officer Ruberti recognized as Angel and the other from the driver's side back seat, whom he recognized as Candido. Both left the vehicle doors open, and began walking "with a quick pace" towards the residence while Candido kept his eyes on Officer Ruberti. According to police information, both individuals were known to carry weapons. As Angel and Candido went towards the house, Officer Ruberti ordered them to return to the vehicle and neither individual complied.

Because Officer Ruberti was concerned there might be weapons in the vehicle, he then requested that the driver of the vehicle, Daniel, and the remaining passenger, Manuel, keep their hands visible. At this point, three other officers arrived at the scene. Officers Ruberti and Adams followed Angel and Candido and advised them that they would be charged with obstruction if they did not return to the Suzuki. Angel's mother, Hilda, came to the door of the residence and let Angel and Candido inside.

At that juncture, the officers returned to the Suzuki and removed Daniel and Manuel, telling them they were not under arrest, but placing them in the back of the patrol cars for safety reasons. Both doors of the Suzuki were left open.

As Hilda came out of the house, she started yelling and screaming aggressively. The officers first informed her of the need to have Angel and Candido come outside, and when the two men came to the doorway, Officer Ruberti advised them they were under arrest for obstructing. Hilda stood in Ruberti's way, and Angel and Candido went back inside. Hilda was arrested and placed in a patrol vehicle.

Officer Robert Magee testified that after Manuel and Daniel were removed from the Suzuki, he went over to the open front passenger-side door and, standing between the open door and the curb, he looked through the window.

He saw a bag underneath the front passenger seat, used his flashlight, and saw the barrel of a gun sticking out from underneath the bag. Officer Magee yelled "gun" to alert the other officers in the area of the presence of a weapon.

Once sergeant Stanley Czaplinski heard Magee yell "gun" he shined his flashlight, looked inside on the driver's side of the Suzuki, and saw the barrel and part of the handle of a second handgun under the driver's floor mat.

Officer Charles Garrison testified that after the second gun was found, with the door wide open, he used his flashlight, and searched under the driver's seat and the driver's side rear passenger area. In the rear, he saw the handle of a third handgun sticking out of a black piece of clothing, later determined to be one of three Halloween masks found in the Suzuki. All three of the handguns were seized. By that time, approximately thirteen Vineland officers had responded to a radio call and had set up a perimeter around the residence. Shortly thereafter, Candido and Angel emerged from the house and surrendered to the police without incident.

All three defendants filed separate motions to suppress the three handguns and three masks found in the Suzuki. On December 21, 2006, a hearing was held concerning the legality of the warrantless search of the Suzuki. Four of the officers and none of the defendants testified. Finding the State's witnesses credible, the trial court denied the motions to suppress. The court determined that the first two guns were in plain view and that exigent circumstances existed to allow a further search of the vehicle.

Subsequently a second suppression hearing was held concerning Manuel's taped verbal statement given after his arrest. At that hearing, Officer Ruberti testified that Manuel was brought to the police station and Officer Magee gave Manuel his <u>Miranda</u> warnings. Officer Magee also testified that he gave <u>Miranda</u> warnings at the scene and that Manuel signed the <u>Miranda</u> card at 1:35 a.m. Manuel acknowledged that he wanted to make a statement, but he indicated that he would talk to the police

if they released Hilda. He wanted to make sure that Hilda
went home that night. By the time Manuel made that
statement, the police had already decided to release Hilda
with a summons, although Manuel was not told that fact.

In his brief statement, Manuel admitted that two weapons
in the vehicle were his and that he had purchased them
from a person in Walnut Manor Apartment Complex. The
trial court denied Manuel's motion to suppress his
statement, finding the State's witnesses were "extremely
credible" and Manuel made a "voluntary, knowing and
intelligent waiver of his <u>Miranda</u> rights."

(Dkt. No. 11-20 at 6-10) (citation in footnote omitted).

## C.   Ground One

In Ground One of his habeas petition, Petitioner, as a passenger of the Suzuki

where three guns were found, raises a Fourth Amendment claim of improper search

and seizure, which he contends should have resulted in suppression of the weapons

that formed a basis for his conviction. (Dkt. No. 1 at 19-23.) Petitioner acknowledges

that a motion to suppress hearing was conducted, prior to trial, on behalf of all

defendants, and the trial court found no Fourth Amendment violation.

Respondents oppose relief on this claim, asserting that the state court did not

err in denying the motion to suppress the weapons. (Dkt. No. 11 at 29-30).

Respondents contend that *Stone v. Powell*, 428 U.S. 465, 82-83 (1972), precludes

Petitioner from challenging the search that occurred in this case because the State

provided an opportunity for full and fair litigation of Petitioner's Fourth Amendment

claims in a pretrial motion to dismiss, and before the Appellate Division under

N.J.Ct.R. 3:5-7. (*See* Dkt. No. 11-1 (pretrial motion); Dkt. No. 11-20 at 11-17 (App. Div. Opinion.))

The analysis must begin with the availability of habeas relief for a Fourth Amendment improper search and seizure claim. The Supreme Court in *Stone v. Powell* held that,

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Stone*, 428 U.S. at 482.  The bar imposed by *Stone* may not be overcome by an erroneous decision or a summary denial of a Fourth Amendment claim. *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002). Petitioner had a full and fair opportunity to litigate his claims, first in his pretrial motion to suppress hearing (Dkt No. 11-1), and, second, before the Appellate Division under N.J.Ct.R. 3:5-7(d).[2] Therefore, this Court may not review Petitioner's Fourth Amendment habeas claims, and Ground One of the habeas petition is denied.

**D.    Ground Two**

For his second ground for habeas relief, Petitioner asserts that the trial court erred by permitting the State to elicit irrelevant and highly prejudicial testimony

---

[2] N.J.Ct.R. 3:5-7(d) provides, "Appellate Review. Denial of a motion [to suppress evidence] made pursuant to this rule may be reviewed on appeal from a judgment of conviction notwithstanding that such judgment is entered following a plea of guilty."

relating to three masks found in the motor vehicle, in which he was a passenger.

(Dkt. No. 1 at 24-26.) In support of this claim, Petitioner states the following.

> Prior to trial, co-counsel made a motion in limine seeking to preclude the State from eliciting testimony regarding three masks which were found in the vehicle stopped by patrolman Ruberti on the night in question. [D]efense counsel joined in the request and[,] although the trial court initially questioned the relevance of the masks[,] it ultimately permitted the [S]tate to elicit testimony regarding the mask[s,] further allowing them to be marked into evidence as well. It is submitted that the trial [c]ourt erred in permitting the elicitation of such testimony[,] which was not only irrelevant but highly prejudicial and inflammatory in nature.
>
> Co-counsel initially maintained that the introduction of testimony regarding the masks would have a nefarious purpose[,] since[,] although none of the defendants were charged with any robbery or theft[,] the existence of the masks might imply such an intent on their behalf. Defense counsel agreed[,] maintaining the potential for prejudicing the jury was high while the probative value was nil. He noted the only reason the prosecutor would want to elicit such testimony would be to plant in the jury's mind the belief that the masks were possessed for an inappropriate purpose. Accordingly, such concurred in this assessment.
>
> Pursuant to questioning by the court[,] the prosecutor indicated he intended to introduce the masks into evidence. Accordingly, the court believed it was appropriate to actually view the masks.
>
> In the meantime, the prosecutor maintained the masks had a very high probative value. Specifically[,] since there were two rear passengers and three masks in the back seat, such testimony would demonstrate that all four individuals had access to the entire interior of the vehicle. He acknowledge[d] the masks were somewhat ominous looking, since they were black and essentially came down to the shoulder area. Nevertheless, he maintained the masks bolstered his argument that the people in the back

11

of the car could possess things in the front of the car and vice versa.

The court believed there was a potential nexus between the masks and the handguns. Since there was probative value arising out of the testimony, it denied the motion[,] although it intended to consider instructing the jury regarding the masks.

Shortly thereafter the masks were brought into the courtroom. The court noted that they were hoods which covered the face, characterizing each mask[] as like the old executioner[']s type thing, except the face had a mesh over it. After observing the masks[,] the court noted that his previous ruling was not affected.

At the conclusion of testimony, the prosecutor sought to admit the mask[s] into evidence. Defense counsel opposed the request, maintaining the prejudicial impact far exceeded any probative value. The court again noted the masks appeared to be executioner style, and that ["]they looked like the ancient - - execute guy with the axe you know, or the chopping block or the guillotine operator or the hangman or something like that.["] Co-counsel emphasized that the masks were frankly similar to the video in which an American citizen had been beheaded as depicted in an al Qu[a]da video. Referencing the negative connotation to masks which covered the face[,] he maintained they should not be entered into evidence.

In its ruling the court acknowledged that these masks do have a character to them that has the certain ominous effect that potentially could be prejudicial. Nevertheless[,] since there was testimony one of the masks had partially covered up one of the handguns in the vehicle[,] it permitted the masks to be entered into evidence[,] subject to an appropriate limiting instruction[,] which would be suggested by the defense. Such an instruction was subsequently discussed between counsel and the court, with the court ultimately instructing the jury during its charge that it was not illegal to possess such masks and should not be considered by the jury as evidence of any intention to commit any crimes involving the masks.

12

In agreeing to issue a limiting charge to the jury, the court reference[d] N.J.R.E. 404(b) as possibly providing guidance for such an instruction. That rule prohibits the introduction of other crimes evidence to demonstrate a defendant as generally disposed toward criminal behavior, and is therefore guilty of committing the crime for which he is charged. However, conduct which is part and parcel of the offense being tried is not excludable under N.J.R.E. 404(b)[,] since such conduct is considered res gestae evidence.

Testimony regarding the three masks was elicited from patrolman Charles Garrison[,] who indicated he went to the driver[']s rear door area[,] which was open[,] and shined his flashlight inside. He immediately noticed the handle portion of a gun was sticking out from beneath some black clothing. He identified that piece of black clothing as well as two other piece[s,] which were like black masks[,] Halloween masks. The other two masks had been found on the rear back seat.

The prosecutor[']s contention that testimony relating to the masks[,] as well as the masks themselves, possessed high probative value[,] was not only strained but lacking in substance. He maintained it was important to demonstrate the 3 defendants on trial had access to the entire area, yet the mere fact there were 3 masks in the back seat with only two rear seat passengers did not even remotely support such an inference. He maintained the two rear-seat passengers did not need 3 masks, implying that those in the front were a part and party to a possession of the masks. That fact bolstered his argument that the back people can possess things in the front of the car, namely the guns[,] and vice versa.

However, as court aptly noted[,] while constructive possession was a huge issue in the case[,] the issue was [] constructive possession of handguns. There was simply a lack of any nexus whatsoever between the masks found in the vehicle and the extent[,] if any[,] to which one or more of the occupants possessed the guns found inside the vehicle.

> Further[,] the fact that one of the guns were [sic] allegedly
> found partially hidden by one of the masks did not justify
> the admission of all three masks into evidence. Rather, the
> testimony was sufficient by itself to establish the desired
> effect sought by the State.
>
> In essence, whatever probative value resulting from the
> three masks, [which] were not only testified to but also
> allowed to be observed by the jury, their prejudicial impact
> was so significant as to irreparably prejudice the defense.
> In this regard all parties[,] including the prosecutor and the
> Court, characterized the masks in an extremely negative
> fashion. Under such circumstances[,] the masks had to
> have had an extremely inflammatory impact upon jurors.
>
> The Appellate Division acknowledged the trial court's
> acknowledgment that the masks do have a character to
> them that has a certain ominous effect that potentially
> could be prejudicial.
>
> The Appellate Division[,] however[,] did not find the trial
> court's decision to admit evidence of the masks as an abuse
> of discretion. The court even stated that the masks
> appeared to be executioner-style masks and did have a
> certain prejudicial effect.

(Dkt. No. 1 at 24-26) (alterations added).

Respondents oppose relief on this claim, invoking the statutory language of 28

U.S.C. § 2254(a), a writ of habeas corpus can only be granted on the ground that the

petitioner is "in custody in violation of the Constitution or laws or treaties of the

United States." (Dkt. No. 11 at 30-32, quoting 28 U.S.C. 2254(a)). Petitioner

challenged the state court's ruling under New Jersey evidentiary law.

It is well-settled that habeas review does not extend to state court rulings on

the admissibility of evidence under state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68,

(1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") Upon review of the habeas petition, Petitioner asserts violation of state-law evidentiary rules, a claim which is not cognizable on habeas review.  Therefore, the Court denies Ground Two of the habeas petition.

Moreover, even if Petitioner had invoked the Due Process Clause of the Fourteenth Amendment to challenge the fundamental fairness of his trial,[3] this Court would be required to give deference to the highest reasoned state court determination, assuming Petitioner exhausted his federal claim in the state courts. The highest reasoned decision was by the Appellate Division, on direct review, as follows:

> Prior to trial, Manuel's counsel made a motion in limine to preclude the State from introducing testimony regarding the three masks found by Officer Garrison. The defendants argue that the masks were prejudicial and would plant in the minds of the jurors that they were possessed for an inappropriate purpose. The State counters that the masks had high probative value concerning the constructive possession of the handguns since all three masks were in different areas of the Suzuki. Moreover, the State submits that since Daniel had asserted in connection with his guilty plea that he was responsible for all three guns, the prosecutor wished to use the masks to establish that three people, not one, possessed the three guns.

---

[3] To show that an evidentiary error rose to the level of a due process violation, a petitioner must show the error was "of such magnitude as to undermine the fundamental fairness of the entire trial." *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001) (citing *McCandless v. Vaughn*, 172 F.3d 255, 262 (3d Cir.1999) and *Lesko v. Owens*, 881 F.2d 44, 51–52 (3d Cir.1989)).

A trial court's evidentiary decision will only be overturned where the decision was a palpable abuse of discretion, or the decision represents a clear error of judgment. State v. Koedatich, 112 N.J. 225, 313 (1988), cert. denied, 488 U.S. 1017, 109 S.Ct. 813, 102 L.Ed.2d 803 (1989). In reviewing the trial court's decision to permit evidence of the masks, we perceive no abuse of discretion.

Evidence is relevant if it has "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. Once the trial judge determines the evidence is relevant, admission of the evidence is within his discretion. State v. Catlow, 206 N.J. Super. 186, 193 (App. Div. 1985). N.J.R.E. 403 provides:

> Except as otherwise provided by these rules or other law, relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence.

The burden is on the party urging exclusion. Biunno, Current N.J. Rules of Evidence, comment 1 on N.J.R.E. 403 (2011). To be excluded, the probative value must be "so significantly outweighed by [its] inherently inflammatory potential as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation." State v. Thompson, 59 N.J. 396, 421 (1971). The prejudicial effect can be minimized by a limiting instruction. Ocasio v. Amtrak, 299 N.J. Super. 139, 159-60 (App. Div. 1997).

Here, the trial court, while acknowledging that the "masks do have a character to them that has a certain ominous effect that potentially could be prejudicial," found that the masks had probative value to establish knowledge since the jurors can consider whether more than one occupant of the vehicle in fact actively or constructively possessed the handguns. Further, the trial judge found that the masks would bear on the credibility of the driver, Daniel, because he pled guilty and claimed ownership of the guns.

Significantly, the judge also provided a limiting instruction.  He instructed:

> You should understand that there has been no claim that any of the four occupants of the car committed any crimes using these masks or that the masks were possessed for use in some unlawful — for some unlawful purpose. There's been no evidence, there's been no claim as such. In fact, the date in question here is October 5th, 26 days before Halloween, and its [sic] not illegal to possess these masks.  Therefore, these masks should not be considered by you as evidence of any intention to commit any crimes involving these masks, nor should you draw any inference as to any criminal intentions on the part of anyone in the car based solely on the fact that the masks were present in the car.
>
> You may consider the masks as you deem appropriate and make — and draw what conclusions you will — or inference that you may, based upon what I've just told you in that charge.

We do not find that the trial court's decision to admit evidence of the masks an abuse of discretion. The masks appeared to be "executioner-style" masks, and did have "a certain prejudicial effect"; however, the contention of the State was that the defendants were using the masks to conceal the guns; thereby bespeaking their awareness and exercise of control of the weapons. It is presumed that a jury follows limiting instructions unless there is an affirmative showing to the contrary, see State v. Macilwraight, 344 N.J. Super. 544, 547 (App. Div. 2001), and no such showing has been made. Defendants did not show that the probative value was substantially outweighed by the prejudicial effect.

(Dkt. No. 11-20 at 17-21.)

17

On habeas review, to prove a state court's decision involved an unreasonable application of clearly established federal law, "a petitioner must persuade a federal court that no "fairminded juris[t]" could reach the state court's conclusion under [the Supreme] Court's precedents." *Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022) (quoting *Davis v. Ayala*, 576 U.S. 257, 269 (2015) (first alteration in original, internal quotation marks omitted in original). In this case, a fairminded jurist could agree with the Appellate Division's determination, and that is sufficient to deny the habeas claim.  When the trial court's limiting instruction is taken into account, and presumably followed by the jury, admission of the masks, one of which was used to conceal a gun in the vehicle, did not so infect the entire trial with unfairness as to violate due process. Therefore, even had Petitioner invoked the Due Process Clause in challenging the state court's evidentiary ruling, he would not be entitled to habeas relief.

### E.    Ground Three

In his third ground for relief, Petitioner argues that the trial court erred in instructing the jury regarding the concept of flight. (Dkt. No. 1 at 27-29.) Respondents oppose relief on this claim because Petitioner alleges only that the trial court erred. (Dkt. No. 11 at 32-34.) Habeas relief is not warranted where an instruction was erroneous, it must violate some constitutional right.  (*Id.* at 33, citing *Estelle*, 502 U.S. at 72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Cupp v. Naughton*, 414 U.S. 141, 147 (1973)).

Upon review, even with liberal construction of the habeas petition, Petitioner failed to allege the trial court's jury instruction regarding flight violated a constitutional right. Petitioner challenges the instruction as erroneous and lacking foundation. "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). Moreover, even if Petitioner had raised a federal due process challenge to the jury instruction, he was required to show there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution. *Estelle v. McGuire*, 502 U.S. at 72.

The trial court instructed the jury on flight:

> There has been some testimony in this case from which you may infer that the defendants Angel Rivera and Candido Mayas fled shortly after the alleged commission of the crime or after the stop in this case. These defendants deny that these acts constituted flight. The question of whether or not these defendants fled after the commission of the crime is another question of fact for you to determine.

> The mere departure from a place where a crime has been committed does not constitute flight. If you find that a defendant fearing that an accusation or arrest would be made against him on a charge involved in the indictment, took refuge in flight for the purpose of evading the accusation or arrest on that charge, then you may consider such flight in connection with all other evidence in the case as an indication or proof of consciousness of guilt.

> Flight may only be considered as consciousness of guilt if you should determine that the defendant's purpose in leaving was to evade accusation or arrest for the offense charged in the indictment.

In this particular case—you will recall that, and this charge makes reference to a crime, that the officer was stopping the vehicle for a tail light violation. There was testimony that he ultimately gave seat belt tickets.

The prosecutor in his closing remarks made reference to the fact that they're not allowed to leave. They very well may be able to leave. It all depends on the facts and the circumstances, and whether a reasonable person in their situation would believe that they had a right to leave.

I believe the testimony was that they were making statements, "You're harassing us. You are – – " I think the testimony was, "You're harassing us. We haven't done anything wrong," and they were – – the testimony was that they then left the area, notwithstanding an officer's command to return to the car and went into the home that was located on the site.

Now, after consideration of all the evidence you find that either of these defendants, fearing that an accusation or arrest would be made against him on the charges involved in the indictment took refuge and flight for the purpose of evading the accusation or arrest, then you may consider such flight in connection with all other evidence in the case as an indication or proof of consciousness of guilt of that defendant.

It is for you as judges of the fact to decide whether or not evidence of flight shows a consciousness of guilt and the weight to be given such evidence in light of all other evidence in the case.

What that asks you to do is to try to determine what is in the minds of those two individuals when they left the scene, and I can tell you that under certain circumstances individuals have an absolute right to walk away from a police officer who's making a field inquiry, and in certain circumstances they don't. It is an issue as to whether the police in this case actually had a – – or whether or not they had a right to leave if the issue is what was in their minds at the time.

(Dkt. No. 11-10 at 59-61.)

The Appellate Division denied Petitioner's claim of jury instruction error on direct appeal as follows:

> At the end of the case, the prosecutor requested a jury charge on flight, or alternatively, permission to comment in summation on Angel and Candido's actions in leaving the vehicle and disobeying Officer Ruberti's orders. The trial judge initially denied the request for a flight charge; however, after hearing arguments, the trial judge concluded that it was a question for the jury to determine whether the actions constituted flight.
>
> Evidence of flight is admissible of consciousness of guilt, and, consequently, admissible to show guilt. State v. Ingram, 196 N.J. 23, 46 (2008). The circumstances of flight must be unexplained "'and in conjunction with the leaving, reasonably justify an inference that it was done with a consciousness of guilt and pursuant to an effort to avoid an accusation based on that guilt.'" State v. Mann, 132 N.J. 410 418-19 (1993) (quoting State v. Sullivan, 43 N.J. 209, 238-39 (1964) cert. denied 382 U.S. 990, 86 S.Ct. 564, 15 L. Ed. 2d 477 (1966)).
>
> Here, there is evidence of "unexplained circumstances" beyond mere departure, which reasonably supports an inference that defendants fled with a consciousness of guilt in an effort to avoid accusation. See Sullivan supra, 43 N.J. at 238-39.  Candido and Angel left the vehicle as soon as it stopped despite being directed to stay. Officer Ruberti told them to return to the car and neither complied. It is reasonable to infer that Candido and Angel were attempting to avoid accusation or apprehension of the weapons charges which were ultimately brought against them. The handguns were found shortly after Candido and Angel left the vehicle and their decision not to stop when signaled to do so could reasonably imply their consciousness of guilt. This was a question for the jury and correctly submitted. We are satisfied that in this context the flight charge was applicable and not unduly prejudicial.

21

(Dkt. No. 11-20 at 21-22.)

The Supreme Court has held "the law is entirely well settled that the flight of the accused is competent evidence against him as having a tendency to establish his guilt." *Allen v. United States*, 164 U.S. 492, 499 (1896). During a legitimate traffic stop, which the Appellate Division found here, "a police officer has the authority and duty to control the vehicle and its occupants, at least for a brief period of time...." *United States v. Bonner*, 363 F.3d 213, 217 (3d Cir. 2004).  A jury instruction on flight is appropriate where a passenger of the stopped vehicle prevented the officer from controlling the stop by fleeing the vehicle "even before the purpose of the stop was even announced."  *Id.*  Thus, the Appellate Division's opinion did not involve an unreasonable application of federal law. The Court will deny Ground Three of the habeas petition.

### F.    Grounds Four and Five

In Grounds Four and Five of his habeas petition, Petitioner challenges the PCR court's denial of an evidentiary hearing on his ineffective assistance of counsel claims. Petitioner claims that he established a prima facie case of ineffective assistance of counsel by, among other things, submitting an affidavit of Daniel Rivera, who stated he would testify that all of the weapons found in the Suzuki were his, and that Petitioner was innocent.  Defense counsel failed to call Rivera as a witness. (Dkt. No. 1 at 30-31.) Respondent notes that the Appellate Division reversed the PCR court and remanded for an evidentiary hearing on Petitioner's

ineffective assistance of counsel claims.  (*See* App. Div. Opinion, Dkt. No. 11-31.)
Therefore, Respondents argue that Petitioner failed to raise a cognizable habeas
claim in Grounds Four and Five of his petition because he already received the
requested relief, an evidentiary hearing. (Dkt. No. 11 at 34-38.)

     Upon review of the petition, Petitioner has not challenged, or even
acknowledged, the remand for an evidentiary hearing, and the PCR court's
subsequent denial of his ineffective assistance of counsel claims. The PCR court held
a hearing (Dkt. No. 11-13), and determined that defense counsel made a reasonable
strategic choice not to call Daniel Rivera as a witness, primarily because his
testimony at his plea hearing was not credible.[4]  (Dkt. No. 11-35 at 9-11.)  The
Appellate Division upheld the PCR court's decision.  (Dkt. No. 11-39.) The
Appellate Division found defense counsel's testimony, that he did not call Rivera as a
witness because he lacked credibility, was supported by the record. (*Id.* at 7.) Defense
counsel also feared the jury would believe that Rivera's testimony was biased
because he had a close relationship with Petitioner. (*Id.*) Defense counsel believed
that a stipulation that Rivera pled guilty to possession of the weapons was sufficient
to overcome the State's proofs. (Dkt. No. 11-39 at 7.) Petitioner has not
acknowledged the Appellate Division's opinion, let alone argued how the decision

---

[4] On remand, the Honorable Jean S. Chetney, J.S.C. presided over Petitioner's PCR
evidentiary hearing, where Steven Patrick, Petitioner's trial counsel, and Daniel Rivera, a
co-defendant, testified on behalf of the defense. (Dkt. No. 11-13.) At a second hearing, the
PCR court heard arguments from counsel on the ineffective assistance of claims.  (Dkt. No.
11-14.) The PCR court denied Petitioner's ineffective assistance of counsel claims in a
decision dated February 27, 2017.  (Dkt. No. 11-35.)

was contrary to or an unreasonable application of the *Strickland* standard[5] for Sixth Amendment ineffective assistance of counsel claims. The Appellate Division reasonably applied the *Strickland* standard in denying Petitioner's ineffective assistance of counsel claims because counsel made a reasonable strategic choice not to call Rivera as a witness.  For these reasons, the Court will deny Grounds Four and Five of the habeas petition.

## III.    CERTFICATE OF APPEALABILITY

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327. For the reasons discussed above, Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will deny a certificate of appealability.

## IV.    CONCLUSION

Petitioner has not established his burden on habeas review to show the state courts' denial of his claims was contrary to or involved an unreasonable application of

---

[5] The Appellate Division accurately described the *Strickland* standard in its decision.  (Dkt. No. 11-39 at 67, citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

clearly established federal law, nor did Petitioner overcome the presumption of correctness of a state court factual finding, and establish that a state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Therefore, the Court denies the habeas petition.

An appropriate Order follows.

Date:  **March 29, 2023**

s/Renée Marie Bumb
RENÉE MARIE BUMB
Chief United States District Judge
